The document below is hereby signed.

Signed: August 24, 2016



_S. Martin Teel, Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re | ) |
| | ) |
| WILLIAM H. LAWRENCE, III, | ) Case No. 15-00304 |
| | ) (Chapter 7) |
| Debtor. | ) **Not for Publication in West's** |
| | ) **Bankruptcy Reporter.** |

MEMORANDUM DECISION AND ORDER RE
THE UNITED STATES TRUSTEE'S MOTION UNDER
11 U.S.C. § 707(b)(1) TO DISMISS CHAPTER 7 CASE FOR ABUSE

This case is pending as a case under chapter 7 of the Bankruptcy Code (11 U.S.C.). The U.S. Trustee filed a motion to dismiss this case under 11 U.S.C. § 707(b)(1), which permits dismissal of the case if the granting of relief under chapter 7 would be an abuse of the provisions of chapter 7. I will deny the U.S. Trustee's motion to dismiss insofar as it rests on an assertion that a presumption of abuse arose under 11 U.S.C. § 707(b)(2), and will set a hearing to take evidence to address whether the case should nevertheless be dismissed for abuse pursuant to § 707(b)(1) upon consideration of the totality of the circumstances pursuant to 11 U.S.C. § 707(b)(3)(B).

I

The debtor filed a voluntary petition commencing this case as a case under chapter 13 of the Bankruptcy Code on June 4, 2015.  The debtor's scheduled debts included amounts owed to the IRS in the amount of $570,322.00, which he marked as "disputed." On June 5, 2015, the chapter 13 trustee filed a motion to dismiss the case with prejudice based on the debtor's ineligibility to be a chapter 13 debtor due to the debt limits under 11 U.S.C. § 109(e) and alleging that the case was filed in bad faith because of that debt limit ineligibility.  The debtor then, on June 18, 2015, voluntarily converted his case to chapter 7.  The debtor's debts are primarily consumer debts, such that his case might be subject to dismissal under 11 U.S.C. § 707(b)(1) in the event that the granting of relief under chapter 7 would be an abuse of chapter 7.  On July 31, 2015, because a chapter 7 *Means Test* form had not yet been filed by the debtor, the U.S. Trustee filed a statement indicating that she was unable to determine whether the debtor's case would be presumed to be an abuse under § 707(b)(2), which sets forth a  so-called "means test" for ascertaining whether a presumption of abuse arises.

Section 707(b)(2)(A)(i) provides a so-called "means test" for ascertaining whether a presumption of abuse arises:

> [T]he court shall presume abuse exists if the debtor's current monthly income reduced by [allowable deductions] and multiplied by 60 is not less than the lesser of–

>       (I) 25 percent of the debtor's nonpriority
>       unsecured claims in the case or $7,475, whichever
>       is greater; or
>
>       (II) $12,475.

On August 5, 2015, the debtor filed a *Chapter 7 Statement of Your Current Monthly Income* (Official Form 22A-1) and *Chapter 7 Means Test Calculation* (Official Form 22A-2). The forms reflect a current monthly income of $12,000. On the *Means Test* form, the debtor calculated deductions for allowances and expenses in the amount of $19,904.96, resulting in a negative monthly disposable income under 11 U.S.C. § 707(b)(2) of -$7,904.96, and he thus indicated on the form that the presumption of abuse does not arise. The $19,904.96 of expenses includes $13,696.02 of mortgage expenses related to a home that the debtor intended on the date of conversion to surrender.

On September 4, 2015, the U.S. Trustee filed her motion seeking to dismiss the case (unless the debtor elected to have the court convert the case to a case under chapter 11 of the Bankruptcy Code). In her motion, the U.S. Trustee objects to inclusion on the *Means Test* form of the $13,696.02 of mortgage expenses. When those expenses are eliminated, and replaced with the $2,264.00 housing allowance under IRS guidelines permitted as an expense under line 9a of the *Means Test* form when there is no mortgage expense, the result is that the *Means Test* form would show a positive monthly disposable income under § 707(b)(2) of

3

$3,527.06. If that figure is used, the *Means Test* form would show that the debtor's case *is* presumed to be an abuse.[1] The U.S. Trustee seeks alternatively to have the court dismiss the case for abuse pursuant to § 707(b)(1) upon consideration of the totality of the circumstances pursuant to 11 U.S.C.

---

[1] By the court's calculation, the presumption of substantial abuse would still arise even if Line 35 of the *Means Test* form is changed to reflect that priority debts are substantially higher than the $18,337.00 of priority tax claims the debtor listed on Line 35. From an examination of the debtor's schedules and a proof of claim filed by the IRS, it appears that the debtor may owe $201,285.77 in priority taxes:

   (1) $188,259.10 "CIV PEN" claims that appear to be denoted on tax lien notices attached to the IRS proof of claim as 26 U.S.C. § 6672 liabilities;

   (2) $10,434.67 owed to the IRS for other priority tax claims; and

   (3) $2,592 for scheduled priority tax claims owed Maryland).

The IRS's proof of claim asserted that, based on tax liens, the $188,259.10 in § 6672 liabilities were secured claims, but the debtor's *Schedule D - Creditors Holding Secured Claims* shows that after taking into account the debtor's mortgage debt, there was no value available for the IRS to have allowed secured claims under 11 U.S.C. § 506(a), such that the claims were actually unsecured claims. Using the $201,285.77 figure would increase the deduction for priority taxes per month to $3,354.76, an increase of $3,049.14 per month over the $305.62 per month calculated by the debtor. Even adjusting for the $3,049.14 difference (and if the debtor is limited to a $2,264.00 housing allowance, as the U.S. Trustee asserts is appropriate), the monthly disposable income would be $477.92. Although that $477.92 is substantially smaller than the $3,049.14 net disposable income that the U.S. Trustee calculated is appropriate, a presumption of substantial abuse would apply because 60 times $477.92 equals $28,675.20 and under 11 U.S.C. § 707(b)(2)(A)(i), that far exceeds the maximum possible threshold of $12,475 for the presumption to arise.

4

§ 707(b)(3)(B).  The court held a hearing on the motion on December 4, 2015, which, by agreement, the parties limited to the issue of whether there was a presumption of abuse.

II

The U.S. Trustee argues that the presumption of abuse under § 707(b)(2) arises in this case because, when the mortgage expenses are excluded from the debtor's means test calculation, the debtor's monthly disposable income multiplied by 60 is greater than $12,475, and thus is necessarily "not less than the lesser of" the amount specified in § 707(b)(2)(A)(i)(I) (whatever that amount might be) and the $12,475 amount specified in § 707(b)(2)(A)(i)(II).  The debtor concedes that if a presumption of substantial abuse arose under the statute, the case must be dismissed.

The expenses deducted by the debtor to which the U.S. Trustee objects are mortgage payments of $8,186.71 per month and mortgage arrearage cure amounts of $5,509.31 for the debtor's principal residence located at 6629 31st Street, NW, Washington, DC 20015--a property that the debtor intends to surrender according to the *Chapter 7 Individual Debtor's Statement of Intention* (Official Form 8) that he filed after converting his case.  The U.S. Trustee's position is that a deduction for secured debt payments cannot be included on the *Means Test* form when the debtor does not actually intend to make the payments

5

going forward.

The debtor, however, argues that at the time of the filing of the petition he was contractually responsible for the $8,186.71 in monthly mortgage payments, regardless of whether he intended to surrender the property and regardless of whether that surrender would actually come to pass.  Accordingly, that obligation is properly included in the calculation of the debtor's average monthly payments on account of secured debts under § 707(b)(2)(A)(iii).

As a preliminary matter, I note that the deductibility of the mortgage cure payments is an academic issue.[2]  If the debtor's regular monthly mortgage payment of $8,186.71 is allowed as a means test deduction, the debtor's monthly disposable income on the *Means Test* form would be -$2,395.65 even if the deductions of mortgage cure payments are excluded.  And if regular monthly mortgage payments are not allowed as a means test deduction, the presumption of abuse would arise even if the mortgage cure payments are allowed as a deduction.  This moots the question, at least in this case, of whether mortgage cure payments should be included on the debtor's *Means Test* form for chapter 7 when no mortgage cure was feasible (as apparently was the case here).

In support of her position that the debtor cannot claim the

---

[2] The cure payments deducted on the *Means Test* form would appear to be allowable, if at all, under § 707(b)(2)(A)(iii)(II), not § 707(b)(2)(A)(iii)(I).

6

monthly mortgage payments as a means test deduction, the U.S. Trustee relies on an extension of a principle established in chapter 13 cases, including *Hamilton v. Lanning*, 130 S.Ct. 2464 (2010); *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716 (2011); and *In re Quigley*, 673 F.3d 269 (4th Cir. 2012), that the means test, as borrowed under 11 U.S.C. § 1325(b)(3) for purposes of chapter 13, is forward-looking in calculating "projected disposable income" under 11 U.S.C. § 1325(b)(1)(B).  Some courts have extended this principle from chapter 13 to chapter 7 cases, and the U.S. Trustee urges this court to do likewise.  *See, e.g.*, *In re Byers*, 501 B.R. 82, 86 (Bankr. E.D.N.C. 2013).

The point is not settled, however, and the better-reasoned decisions hold that under the chapter 7 means test, debtors may deduct secured payments that are "scheduled as contractually due" on collateral they intend to surrender.  *See, e.g.*, *In re Denzin*, 534 B.R. 883, 884 n.2 (Bankr. E.D. Va. 2015) (acknowledging a split of authority on the issue among Fourth Circuit bankruptcy courts, but noting that the majority of chapter 7 bankruptcy court decisions, both before and after the *Lanning* and *Ransom* cases were decided, have held that chapter 7 debtors can permissibly deduct mortgage payments on collateral they intend to surrender); *In re Demesones*, 406 B.R. 711, 713-14 (Bankr. E.D. Va. 2008) (finding, as a matter of statutory construction, that the word "scheduled" as used in § 707(b)(2)(A)(iii)(I) would be

7

rendered superfluous if the court were to exclude secured obligations relating to collateral the debtor intends to surrender), and; *Lynch v. Haenke (In re Lynch)*, 395 B.R. 346, 348-49 (E.D.N.C. 2008) (nothing in the plain language of the statute suggests that the mortgage expense deduction applies only to payments the debtor actually expects to make).  This is so because the plain language of the chapter 7 means test in § 707(b)(2) and the means test as modified in § 1325(b) differ in crucial ways, as do their contexts and purposes.

To begin with, despite the U.S. Trustee's assertion that the two tests are "the same language, in the same statute," the two tests are plainly different in their statutory texts.  In *Denzin*, the court discussed the chapter 13 test by beginning with *Lanning*:

> *Lanning* addressed the question of the proper calculation of the debtor's "projected disposable income." "Projected disposable income" in § 1325(b)(1)(B) is not defined although "disposable income" is defined in § 1325(b)(2), for purposes of § 1325(b) only, as the current monthly income received by the debtor less amounts reasonably necessary to be expended.  Current monthly income, in turn, is defined in § 101(10A). It is the debtor's average monthly income for the six months preceding the filing of the petition.  The definition makes no adjustment for unusually high or low income received during the six-month period.  The six-month average may be, but is not necessarily, helpful in determining what an individual can reasonably be expected to earn on a regular basis during the three or five years of a chapter 13 plan.  In *Lanning* the debtor received a one-time buyout payment during the six-month period.  The chapter 13 trustee averaged the one-time buyout payment into the debtor's regular monthly income and computed a chapter 13 plan payment that the debtor would not be able

> to sustain.
>
> **The Supreme Court focused on the adjective modifying "disposable income," the word "projected."** It held that, "While a projection takes past events into account, adjustments are often made based on other factors that may affect the final outcome." If there are known or virtually certain changes in the debtor's income from the six-month average, the changes are to be taken into account in determining the debtor's chapter 13 plan payment.

534 B.R. at 885 (emphasis added). The court in *Denzin* continued

by examining *Lanning*'s progeny, *Ransom* and *Quigley*:

> All three cases [*Lanning*, *Ransom*, and *Quigley*] were chapter 13 cases determining the proper amount of the chapter 13 plan payment. All three involved pre-petition income (*Lanning*) or expenses (*Ransom* and *Quigley*) that the debtors knew at the confirmation hearing were different from their [post]-petition income or expenses. . . . . **Had the income or expense been included in the calculation of the chapter 13 plan payment, either the plan would have failed because the plan payment would have been too high, or the Congressional objective of reducing abuse by requiring debtors to pay their "projected disposable income" in the chapter 13 plan would have been frustrated.** The proper analysis is a forward-looking analysis. "Projected disposable income" is, as the Supreme Court held, a projection of future income. **The analysis is founded on the adjective "projected" in § 1325(b)(1)(B).** It achieves the Congressional objective of assuring chapter 13 debtors are making their best efforts in repaying their debts.

534 B.R. at 886 (emphases added).

In contrast, the chapter 7 means test does not contain any

forward-looking language:

> The calculation of monthly expenses in a chapter 7 case under § 707(b)(2) is mechanical. The tables are clearly identified.     The section uses mandatory language—"shall"—in referring to the tables. Debt payments are expressly excluded under § 707(b)(2)(A)(ii).

9

> Secured debts are expressly included under § 707(b)(2)(A)(iii) which instructs how they will be calculated. They are calculated not on the actual payment when the petition is filed but on the average amount of the payments "contractually due to secured creditors" over 60 months.

*Denzin*, 534 B.R. at 887.

The U.S. Trustee argues that in *Lanning* "the Supreme Court adopted a definition of 'projected disposable income' in § 707(b)(2)," but that is incorrect. "Projected disposable income" does not appear in § 707(b)(2) but in § 1325(b).

> While § 707(b)(2)(A) and (B) are referenced in § 1325(b)(3), § 1325(b)(3) is a reference from § 1325(b)(2) which in turn is a reference from § 1325(b)(1)(B). **It is § 1325(b)(1)(B) that injects the modifier "projected" and the forward-looking aspect of the chapter 13 means test**. *Lanning* held that this included known or virtually certain changes in income. *Quigley* applied it to expenses.

*Denzin*, 534 B.R. at 887 (emphasis added).

These key differences in the statutory text are unsurprising because the tests arise in different contexts (chapter 7 versus chapter 13) and each serves a different purpose: the former to guard the door to chapter 7 relief and the latter to determine the amount to be paid to creditors in chapter 13.

> The chapter 13 means test uses the phrase "projected disposable income" while the chapter 7 means test only uses the phrase "disposable income." The one phrase allows for adjustments for known or virtually certain future changes. The other does not. The chapter 7 means test is not forward-looking, but is a static snapshot.

*Denzin*, 534 B.R. at 887.

Congress could well have intended that the test for a

10

presumption of substantial abuse in chapter 7 be readily applied in a straightforward manner that assures certainty and ease of application.  Interpreting the chapter 7 means test as written (as not including a consideration of future changes) assures such certainty and ease of administration, and that interpretation is not inconsistent with other provisions of the Bankruptcy Code.

   The U.S. Trustee's citation to *In re Byers*, 501 B.R. 82 (Bankr. E.D.N.C. 2013), is unpersuasive.  In that case, the court extended the relevant principle from *Lanning*, *Ransom*, and *Quigley* to the chapter 7 case before it without examining in detail the differences between the statutory texts of § 707(b)(2) and § 1325(b) (such as the addition of the word "projected" to the chapter 13 test).  The U.S. Trustee's appeal to legislative intent is also unpersuasive.  Citing H.R. Rep. 109-31(I) at 36 (2005), the U.S. Trustee argues that the purpose of the means test is to ensure those debtors who can afford to repay some portion of their unsecured debts are required to do so.  Legislative intent, however, does not sway the analysis when, as here, the statute is susceptible of an ordinary, plain meaning.  *In re Lynch*, 395 B.R. at 349-50 ("When [courts] adopt a method that psychoanalyzes Congress rather than reads its laws . . . we do great harm.  Not only do we reach the wrong result with respect to the statute at hand, but we poison the well of future legislation, depriving legislators of the assurance that ordinary

terms, used in an ordinary context, will be given a predictable meaning.") (quoting *Chisom v. Roemer*, 501 U.S. 380, 417 (1991)).

For purposes of considering the deduction of monthly mortgage payments "scheduled as contractually due" pursuant to § 707(b)(2)(A)(iii)(I), the reference in § 707(b)(2)(A)(iii)(II) to chapter 13 does not alter the foregoing analysis.  Section 707(b)(2)(A)(iii)(II) provides in relevant part that a debtor is entitled under the means test to deduct an expense for "any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence . . . that serves as collateral for secured debts."  An argument might be made that for *cure payments* the debtor attempts to deduct under that provision, the reference to "a plan under chapter 13" hauls in chapter 13 standards for whether the expense would be permitted for purposes of confirmation of a chapter 13 plan, such that a court is to decide whether the *cure payments* would be allowed as an expense for purposes of determining "projected disposable income" under § 1325(b)(1)(B).  The contrary argument is that § 707(b)(2)(A)(iii)(II) merely asks what amounts would be necessary under a chapter 13 plan to cure arrears in order for the debtor to maintain possession of the debtor's primary residence, without regard to whether the debtor could attain a confirmed chapter 13 plan calling for such cure payments to be

12

made or whether the debtor, in a chapter 13 case, would actually attempt to cure the arrears.  Interpreting § 707(b)(2)(A)(iii)(II) that way would be consistent with administering the means test as a mechanical provision that is readily applied in determining whether a presumption of abuse exists.

Regardless of which argument would prevail for purposes of a debtor's claiming an expense for *cure payments* under § 707(b)(2)(A)(iii)(II), for purposes of a debtor's claiming an expense for *monthly mortgage payments* "scheduled as contractually due" no argument can be plausibly made that the applicable provision, § 707(b)(2)(A)(iii)(I), hauls in "projected disposable income" concepts that apply to confirmation of a chapter 13 plan. A debtor is entitled to deduct "the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition" pursuant to § 707(b)(2)(A)(iii)(I).  That provision makes no reference to chapter 13.  Accordingly, for *monthly mortgage payments* "scheduled as contractually due" the § 707(b)(2)(A)(iii)(I) expense is allowed without any regard to whether the expense would be permitted when determining "projected disposable income" under § 1325(b)(1)(B).

The presumption of abuse under § 707(b)(2) does not arise in this case.

13

III

The U.S. Trustee alternatively argues that this case should be dismissed as an abuse under § 707(b)(1) upon consideration under § 707(b)(3)(B) of the "totality of the circumstances." However, the court did not take evidence on that issue and reserved it for later determination if the court were to reject the U.S. Trustee's argument that there was a presumption of substantial abuse. Accordingly, a further hearing will be necessary.[3]

---

[3] Ahead of any hearing on the "totality of the circumstances," I note the following issues that may be considered. Because of debt limitations in chapter 13, the debtor is not eligible for relief under chapter 13 of the Bankruptcy Code, but chapter 11 does not entail any debt limitation on eligibility for relief under chapter 11. In deciding whether abuse exists, it would be appropriate to look to whether the debtor could successfully pursue a case under chapter 11 that would achieve a meaningful distribution to creditors. In applying the "totality of the circumstances" test the debtor would not necessarily be limited to a housing expense of $2,264.00 as on the *Means Test* form once the debtor and the rest of his four-person household leave the 31st Street property. In addition, the projected attorney's fees, the U.S. Trustee's quarterly fees, and other administrative expenses of a chapter 11 case would have to be taken into account. The debtor may also have substantial priority tax debts (if they are not successfully disputed) that, under 11 U.S.C. § 1129(a)(9)(C), unless the holders of the tax claims agree otherwise, the debtor would be required, under a confirmed chapter 11 plan, to pay in full by June 5, 2020, with interest after the effective date of the plan.

14

IV

In accordance with the foregoing, it is

ORDERED that the U.S. Trustee's *Motion Under 11 U.S.C. § 707(b)(1) to Dismiss Chapter 7 Case for Abuse* (Dkt. No. 54) is denied to the extent if rests on the argument that a presumption of abuse arose under 11 U.S.C. § 707(b)(2).  It is further

ORDERED that the clerk shall set a further hearing on the U.S. Trustee's *Motion Under 11 U.S.C. § 707(b)(1) to Dismiss Chapter 7 Case for Abuse* (Dkt. No. 54) to address whether the case should be dismissed under § 707(b)(1) upon consideration of the totality of the circumstances pursuant to 11 U.S.C. § 707(b)(3)(B).

[Signed and dated above.]

Copies to: Recipients of e-notification of orders.

15